# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY BAYER  <br> 8946 Winchester Road  <br> Carroll, Ohio 43112, <br> <br>     Plaintiff, <br> <br>   v. <br> <br> FRANK BRUNCKHORST CO. LLC  <br> 2225 Spiegel Drive  <br> Groveport, Ohio 43125 <br> <br>  **Serve Also:** <br>  Frank Brunckhorst Co. LLC  <br>  c/o CT Corporation System  <br>  4400 Easton Commons Way  <br>  Suite 125  <br>  Columbus, Ohio 43219 <br> <br>   -and- <br> <br> KRISTEN ANDERSON  <br> 2225 Spiegel Drive  <br> Groveport, Ohio 43125 <br> <br>   -and- <br> <br> SHERRY ZARBAUGH-ROSS  <br> 2225 Spiegel Drive  <br> Groveport, Ohio 43125 <br> <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO. <br> <br> JUDGE: <br> <br> <br> <br> **COMPLAINT FOR DAMAGES** <br> **AND INJUNCTIVE RELIEF** <br> <br> **JURY DEMAND ENDORSED** <br> **HEREIN** |

Plaintiff, Jeremy Bayer, by and through undersigned counsel, as his Complaint against Defendants Frank Brunckhorst Co. LLC d/b/a Boar's Head ("Boar's Head"), Kristen Anderson, and Sherry Zarbaugh-Ross, states and avers the following:

## PARTIES, VENUE, & JURISDICTION

1. Bayer is a resident of the Bloom Township, Fairfield County, Ohio.

2. Boar's Head is a foreign limited liability company that does business at 2225 Spiegel Drive, Groveport, Franklin County, Ohio 43125.

3. Boar's Head is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

4. Anderson is a resident of the state of Ohio.

5. Anderson was Safety Manager for Boar's Head.

6. Anderson at all times hereinafter mentioned, acted directly or indirectly in the interest of Boar's Head in relation to its employees, and is an employer within the meaning of 29 U.S.C. § 2611.

7. Zarbaugh-Ross is a resident of the state of Ohio.

8. Zarbaugh-Ross was HR Business Partner for Boar's Head.

9. Zarbaugh-Ross at all times hereinafter mentioned, acted directly or indirectly in the interest of Boar's Head in relation to its employees, and is an employer within the meaning of 29 U.S.C. § 2611.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Bayer is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601 *et seq.*

11. All material events alleged in this Complaint occurred in Franklin County, Ohio.

12. This Court has supplemental jurisdiction over Bayer's state law claims pursuant to 28 U.S.C. § 1367 as Bayer's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

14. Within 300 days of the conduct alleged below, Bayer filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2022-03044 against Boar's Head ("Bayer EEOC Charge").

15. Bayer dually filed the Bayer EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

16. On or about August 26, 2022, the EEOC issued a Notice of Right to Sue letter to Bayer regarding the Bayer EEOC Charge.

17. Bayer received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

18. Bayer has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

19. Bayer has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

20. Bayer has properly exhausted his administrative remedies pursuant to R.C. § 4112.052.

## FACTS

21. On or about June 8, 2020, Bayer began working for Boar's Head.

22. Boar's Head employed Bayer as an emergency medical technician ("EMT") and a human resources technician.

23. Boar's Head was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

24. As of June 8, 2021, Bayer was employed by Boar's Head for at least 12 months and had at least 1,250 hours of service with Boar's Head and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

25. Bayer sustained an acute medial meniscus tear in both of his knees ("Bayer's Condition").

26. Bayer's Condition was a physical impairment.

27. Because of Bayer's Condition, Bayer was significantly limited in one or more major life activities, including standing, walking, lifting, bending, and working.

28. Bayer has a record of physical impairment.

29. Because of Bayer's Condition, Boar's Head perceived Bayer as disabled.

30. Bayer is disabled within the meaning of ADA.

31. Bayer is disabled within the meaning of R.C. § 4112.01 *et seq.*

32. On or about June 18, 2021, Bayer had surgery on his right knee because of Bayer's Condition.

33. On or about May 7, 2021, Bayer requested FMLA leave for his surgery ("First FMLA Request").

34. Boar's Head approved the First FMLA Request.

35. On or about June 18, 2021, Bayer went out on leave for his surgery.

36. On or about July 9, 2021, Bayer returned to work.

37. On or about September 3, 2021, Bayer had surgery on his left knee because of Bayer's Condition.

38. In or about July 2021, Bayer requested FMLA leave for his surgery ("Second FMLA Request").

39. Boar's Head approved the Second FMLA Request.

40. On or about September 3, 2021, Bayer went out on leave for his surgery.

41. On or about October 1, 2021, Bayer returned to work.

42. After Bayer returned from his second FMLA leave, Leisa Rigsby told Bayer to sign a non-compete and non-solicitation agreement ("Agreement").

43. Rigsby was a human resources generalist for Boar's Head.

44. Rigsby told Bayer that he needed to sign the Agreement in order to keep his job.

45. Rigsby instructed Bayer to post-date the Agreement to June 2020.

46. Rigsby stood over Bayer until he signed the Agreement.

47. When Bayer objected to post-dating the Agreement, Rigsby told Bayer that his employment would be terminated if he refused.

48. Rigsby did not give Bayer time to read the Agreement before signing it.

49. After signing the Agreement, Bayer requested a copy of the Agreement so that he could read it.

50. The Agreement contained a section titled "Loyalty During Employment."

51. Bayer interpreted the "Loyalty During Employment" section to prohibit making reports to the Occupational Safety and Health Administration ("OSHA").

52. During Bayer's employment, Bayer made multiple reports of unsafe working conditions to Anderson, Zarbaugh-Ross, and other plant safety team members and management.

53. In or about March 2022, Bayer reported to Anderson that he believed that the Agreement was attempting to prevent him from making reports to OSHA.

54. Bayer told Anderson verbally that he would make reports of unsafe working conditions to OSHA and Anderson's manager if not corrected.

55. Bayer told Anderson in writing that he would make reports of unsafe working conditions to OSHA and Anderson's manager if not corrected.

56. Bayer told Anderson verbally that he wanted to be able to make reports of unsafe working conditions to OSHA.

57. Bayer told Anderson in writing that he wanted to be able to make reports of unsafe working conditions to OSHA.

58. On or about March 22, 2022, Bayer told Anderson that his doctor told him that he would soon need to have another surgery, this time for stenosing tenosynovitis in his bilateral hands.

59. On or about March 24, 2022, Boar's Head terminated Bayer's employment ("Termination").

60. On or about March 24, 2022, Anderson and Zarbaugh-Ross told Bayer about the Termination ("Termination Call").

61. In the Termination Call, Anderson and Zarbaugh-Ross told Bayer that the reason for the Termination was that Bayer violated the non-compete and non-solicitation provisions in the Agreement ("Stated Reason").

62. Bayer did not violate the non-compete and non-solicitation provisions in the Agreement.

63. The Stated Reason had no basis in fact.

64. The Stated Reason was not the real reason for the Termination.

65. The Stated Reason was not a sufficient basis to justify the Termination.

66. The Stated Reason was pretextual.

67. Boar's Head has a progressive disciplinary policy ("Discipline Policy").

68. A verbal warning is the lowest level of discipline in the Discipline Policy.

69. Bayer did not receive a verbal warning before the Termination.

70. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

71. Bayer did not receive a written warning before the Termination.

72. A termination is the highest level of discipline in the Discipline Policy.

73. Boar's Head knowingly skipped progressive disciplinary steps in terminating Bayer.

74. Boar's Head knowingly terminated Bayer's employment.

75. Boar's Head knowingly took an adverse employment action against Bayer.

76. Boar's Head knowingly took an adverse action against Bayer.

77. Boar's Head intentionally skipped progressive disciplinary steps in terminating Bayer.

78. Boar's Head intentionally terminated Bayer's employment.

79. Boar's Head intentionally took an adverse employment action against Bayer.

80. Boar's Head intentionally took an adverse action against Bayer.

81. Boar's Head knew that skipping progressive disciplinary steps in terminating Bayer would cause Bayer harm, including economic harm.

82. Boar's Head knew that terminating Bayer would cause Bayer harm, including economic harm.

83. Boar's Head willfully skipped progressive disciplinary steps in terminating Bayer.

84. Boar's Head willfully terminated Bayer's employment.

85. Boar's Head willfully took an adverse employment action against Bayer.

86. Boar's Head willfully took an adverse action against Bayer.

87. On or about March 24, 2022, Boar's Head terminated Bayer's employment because of his disability.

88. On or about March 24, 2022, Boar's Head terminated Bayer's employment because of his perceived disability.

89. On or about March 24, 2022, Boar's Head terminated Bayer's employment in retaliation for making reports to OSHA.

90. On or about March 24, 2022, Boar's Head terminated Bayer's employment in retaliation for using qualified FMLA leave.

91. On or about March 24, 2022, Boar's Head terminated Bayer's employment in order to prevent him from using qualified FMLA leave.

92. As a direct and proximate result of Boar's Head's conduct, Bayer suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

**(Defendant Boar's Head)**

93. Bayer restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

94. Boar's Head treated Bayer differently than other similarly-situated employees based on his disabling condition.

95. Boar's Head treated Bayer differently than other similarly-situated employees based on his perceived disabling condition.

96. On or about March 24, 2022, Boar's Head terminated Bayer's employment without just cause.

97. Boar's Head terminated Bayer's employment based on his disability.

98. Boar's Head terminated Bayer's employment based on his perceived disability.

99. Boar's Head violated ADA when it discharged Bayer based on his disability.

100. Boar's Head violated ADA when it discharged Bayer based on his perceived disability.

101. Boar's Head violated ADA by discriminating against Bayer based on his disabling condition.

102. Boar's Head violated ADA by discriminating against Bayer based on his perceived disabling condition.

103. As a direct and proximate result of Boar's Head's conduct, Bayer suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

**(Defendant Boar's Head)**

104. Bayer restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. Boar's Head treated Bayer differently than other similarly-situated employees based on his disabling condition.

106. Boar's Head treated Bayer differently than other similarly-situated employees based on his perceived disabling condition.

107. On or about March 24, 2022, Boar's Head terminated Bayer's employment without just cause.

108. Boar's Head terminated Bayer's employment based on his disability.

109. Boar's Head terminated Bayer's employment based on his perceived disability.

110. Boar's Head violated R.C. § 4112.02 when it discharged Bayer based on his disability.

111. Boar's Head violated R.C. § 4112.02 when it discharged Bayer based on his perceived disability.

112. Boar's Head violated R.C. § 4112.02 by discriminating against Bayer based on his disabling condition.

113. Boar's Head violated R.C. § 4112.02 by discriminating against Bayer based on his perceived disabling condition.

114. As a direct and proximate result of Boar's Head's conduct, Bayer suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

### (All Defendants)

115. Bayer restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

116. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

117. Boar's Head is a covered employer under FMLA.

118. During his employment, Bayer qualified for FMLA leave.

119. During his employment, Bayer told Anderson that he would soon need to take FMLA leave for a surgery.

120. Boar's Head unlawfully interfered with Bayer's exercise of his rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

121. As a direct and proximate result of Boar's Head's conduct, Bayer is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT IV: RETALIATION IN VIOLATION OF FMLA

### (All Defendants)

122. Bayer restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. During his employment, Bayer utilized FMLA leave.

124. After Bayer utilized his qualified FMLA leave, Boar's Head retaliated against him.

125. Boar's Head retaliated against Bayer by terminating his employment.

126. Boar's Head willfully retaliated against Bayer in violation of 29 U.S.C. § 2615(a).

127. As a direct and proximate result of Boar's Head's wrongful conduct, Bayer is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT V: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52

### (All Defendants)

128. Bayer restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. In or about March 2022, Bayer reported to Anderson that would make reports of unsafe working conditions to OSHA and Anderson's Manager if issues were not fixed.

130. In or about March 2022, Bayer reported to Anderson that he intended to make further reports of unsafe working conditions to OSHA.

131. Bayer reasonably believed that violating OSHA regulations is a felony.

132. In the alternative, Bayer reasonably believed that violating OSHA regulations constituted a criminal act that threatens the public's health or safety.

133. Bayer verbally complained to Boar's Head regarding this conduct.

134. Bayer complained to Boar's Head in writing regarding this conduct,

135. Bayer gave Boar's Head an opportunity to cure the reported misconduct.

136. Boar's Head retaliated against Bayer by terminating his employment based on his complaints regarding this conduct.

137. Boar's Head's termination of Bayer was in violation of R.C. § 4113.52.

138. As a direct and proximate result of Boar's Head's conduct, Bayer suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

**(All Defendants)**

139. Bayer restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, including R.C. §§ 4101.11 and 4101.12, or in the common law, requiring employers to furnish a safe environment for employees and frequenters.

141. Defendants' termination of Bayer jeopardizes these public policies.

142. Defendants' termination of Bayer was motivated by conduct related to these public policies.

143. Defendants had no overriding business justification for terminating Bayer.

144. As a direct and proximate result of Defendants' conduct, Bayer has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

**(Defendants Anderson and Zarbaugh-Ross)**

145. Bayer restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

146. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

147. Defendants aided, abetted, incited, coerced, and/or compelled Boar's Head's discriminatory termination of Bayer.

148. Defendants aided, abetted, incited, coerced, and/or compelled Boar's Head's discriminatory treatment of Bayer.

149. Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

150. As a direct and proximate result of Defendants' conduct, Bayer has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff Bayer respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i)    Requiring Boar's Head to abolish discrimination, harassment, and retaliation;

    (ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Boar's Head to restore Bayer to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Bayer for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Bayer claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Case: 2:22-cv-03360-SDM-KAJ Doc #: 1 Filed: 09/07/22 Page: 13 of 14 PAGEID #: 13

          Respectfully submitted,

          */s/ Trisha Breedlove*_____
          Trisha Breedlove (0095852)
          Paul Filippelli (0097085)
          **SPITZ, THE EMPLOYEE'S LAW FIRM**
          1103 Schrock Road, Suite 307
          Columbus, Ohio 43229
          Phone: (216) 291-4744
          Fax:    (216) 291-5744
          Email: trisha.breedlove@spitzlawfirm.com
          Email: paul.filippelli@spitzlawfirm.com
          *Attorneys for Plaintiff Jeremy Bayer*

## JURY DEMAND

Plaintiff Bayer demands a trial by jury by the maximum number of jurors permitted.

          */s/ Trisha Breedlove*_____
          Trisha Breedlove (0095852)
          Paul Filippelli (0097085)